IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JAIME VALOIS,**

        **Plaintiff,**

**v.**                                                                                                          **CIV No. 08-1092 LAM**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** is before the Court on Plaintiff's *Motion to Remand or Reverse Administrative Agency Decision* (*Doc. 20*), filed in this case on June 17, 2009. In accordance with 28 U.S.C. § 636(c)(1) and FED. R. CIV. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge conducting all proceedings and entering final judgment in this case. *Documents 4, 7.* The Court has reviewed Plaintiff's motion (*Doc. 20*) and *Plaintiff's Memorandum Brief in Support of Appeal or Denial of Social Security Disability* (*Doc. 20-2*) (hereinafter, collectively, "*Motion*") as well as *Defendant's Response to Plaintiff's Motion to Remand or Reverse Administrative Agency Decision* (*Doc. 21*) (hereinafter "*Response*"), *Plaintiff's Reply to Defendant's Response to Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 22*) (hereinafter "*Reply*"), and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R.*"). For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and this case **REMANDED** to the Commissioner of Social Security (hereinafter, "Commissioner") for further proceedings consistent with this Memorandum Opinion and Order.

## I.  Procedural History

On October 27, 2005, Plaintiff Jaime Valois filed applications for disability insurance benefits (hereinafter "DIB") and supplemental security income (hereinafter "SSI").  (*See R. at 11, 440.*[1])  In Plaintiff's applications for DIB and SSI, he alleged a disability since May 22, 2005.  (*See R. at 11.*)  In connection with his applications, Plaintiff alleged a disability due to fatigue and pain after a heart attack in 2005, high blood pressure, and left-eye blindness.  ***Motion*** (*Doc. 20-2*) at 1; ***Response*** (*Doc. 21*) at 2; (*R. at 14-16, 41, 75.*)  Plaintiff's applications were denied initially and upon reconsideration.  (*R. at 41, 36.*)

Plaintiff requested a hearing, and Administrative Law Judge (hereinafter "the ALJ") George Reyes conducted a hearing on December 6, 2007.  (*R. at 11, 442.*)  Plaintiff was present and testified at the hearing. (*R. at 11, 442, 447-467.*)  Plaintiff was represented by counsel at the hearing. (*R. at 442-468.*)  No vocational expert (hereinafter "VE") was present or testified at the hearing. (*R. at 442--43.*)

On June 13, 2008, the ALJ issued his decision, finding that Plaintiff was not disabled at step five[2] of the five-step sequential evaluation process[3] because jobs exist in significant numbers that Mr. Valois can perform.  (*R. at 17-18.*)  Therefore, the ALJ concluded that Mr. Valois was not entitled to DIB or SSI because he was not disabled under relevant sections of the Social Security Act.  (*R. at 18.*)

---

[1]The applications themselves are not part of the record.  Plaintiff's ***Motion*** ((*Doc. 20-2*) at 1) and Defendant's ***Response*** ((*Doc. 21*) at 1) indicate that Plaintiff filed his applications on October 25, 2007, but this date appears to be a typographical error considering that the ALJ's decision (*R. at 11*) and Plaintiff's letter to the Appeals Council (*R. at 440*) indicate that the applications were filed on October 27, 2005.

[2]*See* 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), 416.966.

[3]*See* 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1).

Plaintiff requested that the Appeals Council review the ALJ's decision. (*R. at 7, 440-41.*) On September 22, 2008, the Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. (*R. at 3-5.*) On November 20, 2008, Plaintiff filed his complaint in this case. ***Complaint for Judicial Review of Disallowance of Social Security Benefits*** (*Doc. 1*).

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760.  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *Hamlin*, 365 F.3d at 1214.  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the

ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

For purposes of DIB and SSI, a person is considered to be disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the sequential evaluation process, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity;" and (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" which has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[4] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i-iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[4]20 C.F.R. § 404, subpt. P, app. 1.

4

## III.  Plaintiff's Age, Education, Work Experience, and Medical History; ALJ's Decision

Mr. Valois was born on June 10, 1954 (*R. at 17, 447*) and was, therefore, nearly 51 years old when his alleged disability began and 54 years old when the ALJ's decision was issued (*R. at 11, 18.*).  He completed the eleventh grade in Mexico.  (*R. at 17, 449.*)  His only work experience has been in an auto body repair shop.  (*R. at 453-54.*)

On June 13, 2008, the ALJ issued his decision, finding that Plaintiff was not disabled at step five of the five-step sequential evaluation process.  (*R. at 17.*)  At step one, the ALJ found that Mr. Valois had not been engaged in substantial gainful activity since May 22, 2005, the onset date of his alleged disability.  (*R. at 13.*)  The ALJ, therefore, proceeded to the next step.

At step two, the ALJ found that Mr. Valois had several severe, medically determinable impairments: (1) hypertension; (2) coronary artery disease, status post myocardial infarction (on May 22, 2005); (3) right carotid artery stenosis and claudication, status post right carotid stent and angioplasty (on December 8, 2005); and (4) left eye blindness (since October 2005).  (*Id.*)  Because the ALJ found that Mr. Valois had at least one severe, medically determinable impairment, he proceeded to the next step.

At the third step, the ALJ found that none of the step-two impairments, alone or in combination, met or medically equaled any of the Listings found in 20 C.F.R. § 404, subpt. P, app. 1.  (*R. at 13-14.*)  If any listing had been met, the ALJ would have found Mr. Valois disabled at this step.  (*R. at 12.*)  Since the ALJ did not find that any listing was met or that Mr. Valois was disabled at this step, he proceeded to the next step.

Before step four, the ALJ determined that Mr. Valois was capable of performing a "wide, but not full, range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with no work

requiring binocular vision and the ability to wear protective eye gear as needed." (*R. at 14.*) In making this finding, the ALJ considered Mr. Valois' reports of pain in the back and legs that occasionally caused trouble walking and, therefore, necessitated a cane and leg pain that caused trouble sitting down. (*R. at 15.*) The ALJ found that Mr. Valois' claims were exaggerated; he found that Mr. Valois' impairments "would be expected to cause some limitations in his daily functioning abilities" but not to the extent claimed. (*R. at 16.*)

> [Mr. Valois'] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Mr. Valois'] statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not credible *to the extent [that] they are inconsistent with the residual functional capacity assessment*.

(*Id.*) (emphasis added). Ultimately, The ALJ found that Mr. Valois could not perform the full range of light work because of leg and back pain, albeit to a lesser extent than claimed by Mr. Valois, and because of left-eye blindness. (*R. at 14-16.*)

At step four, The ALJ found that Mr. Valois did not have the RFC to return to his past work as an auto body repair person. (*R. at 17.*) Because Mr. Valois' RFC was below that required for auto body repair and because Mr. Valois had no other past work experience, the ALJ found that Mr. Valois could not return to any past relevant work. (*Id.*) The ALJ, therefore, proceeded in the sequential evaluation.

At the fifth and final step, the ALJ found that, considering Mr. Valois' RFC, age, education, and work experience, jobs exist in significant numbers in the national economy that Mr. Valois could perform. (*Id.*) The ALJ acknowledged that Mr. Valois could not perform the full range of light work and that, therefore, the Grids were applicable only as a framework. (*Id.*) The ALJ stated that if Mr. Valois could preform the full range of light work, the Grids would direct a finding of "not

disabled." (*Id.*)  Regarding Mr. Valois' nonexertional limitations, however, which explicitly fall outside the Grid rules, the ALJ found that these "additional limitations have little or no effect on the occupational base of unskilled light work.  A finding of 'not disabled' is therefore appropriate under the framework of [Medical Vocational ('Grid') Rule 202.11]." (*Id.*)  The ALJ, however, gave no explanation as to the basis for his finding that Mr. Valois' nonexertional limitations "have little or no effect on the occupational base of unskilled light work." (*R. at 17-18.*)

## IV.  Analysis

Mr. Valois contends that the ALJ's decision is not supported by substantial evidence and is the result of legal error. ***Motion*** (*Doc. 20*) at 1.  Specifically, he asserts that the ALJ erred at step five of the sequential evaluation process, where the decision is not supported by substantial evidence. *Id.* (*Doc. 20-2*) at 10.  That is, according to Mr. Valois, the Commissioner did not carry his burden of proof when the ALJ found that Mr. Valois' nonexertional impairments[5] had "little or no effect on" his RFC. *Id.* at 10-13.  As relief, Plaintiff asks the Court to reverse the Commissioner's decision or remand this case for further proceedings. *Id.* at 14.  Defendant argues that the decision of the ALJ should be affirmed because he applied the correct legal standards and because his decision is supported by substantial evidence. ***Response*** (*Doc. 21*) at 4-6.

### *A.  The Finding at Issue is Not Supported by Substantial Evidence*

Mr. Valois asserts that the ALJ erred when, without any vocational evidence, he found that Mr. Valois' left-eye blindness had little or no effect on his RFC and that, therefore, Mr. Valois was not disabled. ***Motion*** (*Doc. 20-2*) at 10.  Mr. Valois' specific complaint is that, after finding that Mr. Valois had nonexertional limitations, the ALJ did not call a vocational expert to provide

---

[5]Although Mr. Valois refers only to his left-eye blindness in his motion (***Motion*** (*Doc. 20-2*) at 10-13), the Court notes that the ALJ also found that Mr. Valois suffers from pain (*R. at 16.*).  Like visual impairments, pain is also a nonexertional limitation and may affect the ability to work.  *Channel v. Heckler*, 747 F.2d 577, 580 (10th Cir. 1984).

evidence as to the effect of these limitations on his RFC and, instead, found that these limitations had "little or no effect on the occupational base of light work" with no further explanation or support. *Id.* (citing (*R. at 17*)). Then, the ALJ applied the Grids, finding Mr. Valois not disabled. (*R. at 17-18.*) Defendant responds that the Commissioner's policies support the ALJ's finding that Mr. Valois' visual impairments do not affect his RFC. **Response** (*Doc. 21*) at 5. Defendant, therefore, asserts that the ALJ's finding is supported by substantial evidence. *Id.* at 7.

The Grids provide the Commissioner "administrative notice of the number of jobs that exist in the national economy at the various functional levels (*i.e.*, sedentary, light, medium, heavy, and very heavy)." *Channel v. Heckler*, at 579 (citing 20 C.F.R. § 404, subpt. P, app. 2, § 200.00(b)). If an individual's age, education, training, and RFC all coincide with the criteria of a particular rule in a Grid, the Commissioner may apply the Grid rule to determine whether or not the claimant is disabled. *Id.* Since a claimant's RFC is one aspect of the Grid rules, it must precisely match the RFC described in the rule. *Id.* Grid rules, however, only include RFCs based on *exertional* limitations, not *nonexertional* ones. *Id. at 580.* Thus, in order to understand how the Grid rules are used, it is necessary to distinguish between exertional and nonexertional limitations. *See id.* Exertional impairments may limit physical strength, whereas nonexertional impairments, including visual limitations and pain, do not directly limit physical strength but may reduce an individual's ability to perform gainful work nonetheless. *Id.*

Because the Grids classify RFC based only on exertional limitations, they may not be applicable to claimants with nonexertional impairments. *Id.* Nonexertional limitations do not automatically preclude use of the Grids, however. *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988). An ALJ's "[u]se of the Grids is only precluded to the extent that nonexertional impairments further limit the claimant's ability to perform work at the applicable exertional level."

*Id.*; *Jones v. Astrue*, No. 08-6158, 310 Fed. Appx. 286, 290 (10th Cir. Feb. 6, 2009) (unpublished). Finding whether a claimant's nonexertional impairment limits his ability to work, like all findings, must be supported by substantial evidence. *See Eggleston*, 851 F.2d at 1247 (holding that where the ALJ explained his reasons for finding that the claimant's nonexertional impairment did not further limit his ability to work at the applicable exertional level, the finding was supported by substantial evidence). In other words, an ALJ may apply the Grid rules where the claimant suffers from both exertional and nonexertional impairments only if (1) the ALJ finds that the nonexertional impairments do not further limit the claimant's RFC and (2) that finding is supported by substantial evidence. *See id.*

The ALJ in this case found that Mr. Valois' nonexertional impairments, pain and left-eye blindness, had "little or no effect" on his RFC. The ALJ, however, stopped there. The ALJ did not give any reasons for the finding. He made the conclusion without any explanation or any reference to evidence. The Court, therefore, finds that the finding at issue in this case, that Mr. Valois' nonexertional impairments have "little or no effect" on his RFC, is not supported by substantial evidence.

### *B. The ALJ Did Not Give Reasons For His Finding*

ALJs must give reasons for their decisions and explain the evidence that supports their findings. *Wall v. Astrue*, 561 F.3d 1048, 1068-69 (10th Cir. 2009) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). For example, in *Clifton*, the Tenth Circuit reversed an ALJ's decision because he did not give reasons for his findings. 79 F.3d at 1009-10.

> [T]he ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed

9

>     Impairment. . . . Such a bare conclusion is beyond meaningful
> judicial review.

*Id.* at 1009.  This year, in *Wall*, the Tenth Circuit reaffirmed the *Clifton* rule requiring ALJs to give reasons for their decisions.  *Wall*, 561 F.3d at 1069.  The ALJ in *Wall* met the *Clifton* rule because he did give reasons for discounting the claimant's pain disorder.  *Id. at 1068.*  He noted that the claimant's treatment for pain was routine and conservative.  *Id.*  He also noted that her pain had not increased in severity since her onset date and yet had not kept her from working in the past.  *Id.*  The Tenth Circuit held that these reasons were sufficient under the *Clifton* rule.  *Id.* at 1068-69.

Unlike the ALJ's decision in *Wall*, the ALJ here did not give reasons for the finding at issue.  In *Wall*, the ALJ referred to specific evidence to support his finding.  The ALJ, here, on the contrary, gave no explanation for the finding at issue.  The ALJ's decision in the instant case is more analogous to that in *Clifton*.  Here, as in *Clifton*, the ALJ failed to give any reasons to support the finding at issue.  The ALJ in *Clifton* did not explain or cite to evidence supporting his finding that the claimant did not meet any Listing.  Similarly, here, the ALJ did not explain or cite to evidence supporting his finding that Mr. Valois' nonexertional limitations had "little or no effect" on his RFC.  Because the ALJ did not give reasons for his finding at step five, the case should be remanded.

### *C.  The Commissioner's Policies Required Vocational Evidence*

Defendant asserts that the ALJ's decision was supported by substantial evidence.  To support his position, Defendant distinguishes the instant matter from the precendential cases offered by Mr. Valois.  For example, Mr. Valois cites to *Timmons v. Barnhart*, No. 04-7007, 118 Fed. Appx. 349, 2004 WL 2005931 (10th Cir. Sept. 9, 2004) (unpublished), to support his position that the ALJ erred when he did not solicit vocational evidence.  **Motion** (*Doc. 20-2*) at 11.  In *Timmons*, the Tenth Circuit reversed a denial of social security disability and SSI benefits because

the ALJ failed to obtain vocational evidence regarding the effect of the claimant's visual limitation on his RFC.  118 Fed. Appx. at 352.  Defendant distinguishes *Timmons* from the instant case by correctly pointing out that the *Timmons* claimant was restricted to sedentary work while Mr. Valois is restricted to light work.  **Response** (*Doc. 21*) at 5.  Defendant highlights (*id.*) that the *Timmons* court relied on, *inter alia*, Social Security Ruling (hereinafter "SSR") 85-15, which states that "as long as [the claimant] retains sufficient visual acuity to be able to handle and work with rather large objects . . . , there would be a substantial number of jobs remaining across all exertional levels." SSR 85-15, at *8; *see Timmons*, 118 Fed. Appx. at 353.  Defendant, therefore, concludes that "[SSR 85-15] fully supports the ALJ's conclusion."  **Response** (*Doc. 21*) at 5. Ruling 85-15, however, addresses how to apply the Grid rules to "persons who have *only* a *nonexertional* limitation(s) of function."  SSR 85-15 at *1 (emphasis added).  In the case at bar, the ALJ found that Mr. Valois has both nonexertional and exertional limitations.  (*R. at 13-17.*)  Ruling 85-15, therefore, does not apply to Mr. Valois' case.

Ruling 83-14, on the other hand, does apply to Mr. Valois; it explains how to apply the Grid rules when a claimant has a combination of exertional and nonexertional limitations. SSR 83-14 at 1. Ruling 83-14 notes that "[l]imitations of [sight] can affect the capacity to perform certain jobs at all levels of physical exertion."  *Id.* at *2.  More to the point, the ruling specifically addresses "[l]ight exertion combined with a nonexertional impairment." *Id.* at *4.  The ruling gives two examples to illustrate when vocational evidence is and is not required, and those situations that fall between the two examples "will often require the assistance of a [vocational specialist]." *Id.* at *5.

> Where a person has a visual impairment which is not of Listing severity but causes the person to be a hazard to self and others--usually a constriction of visual fields rather than a loss of

> acuity--the manifestations of tripping over boxes while walking, inability to detect approaching persons or objects, difficulty in walking up and down stairs, etc., will indicate to the decisionmaker that the remaining occupational base is significantly diminished for light work (and medium work as well).
>
> On the other hand, there are nonexertional limitations or restrictions which have very little or no effect on the unskilled light occupational base. Examples are inability to ascend or descend scaffolding, poles, and ropes; inability to crawl on hands and knees; and inability to use the finger tips to sense the temperature or texture of an object. Environmental restrictions, such as the need to avoid exposure to feathers, would also not significantly affect the potential unskilled light occupational base.
>
> Where nonexertional limitations or restrictions within the light work category are between the examples above, a decisionmaker will often require the assistance of a [vocational specialist].

*Id.* When a visual impairment cause a claimant "to be a hazard to self and others," it "significantly diminish[es]" the occupational base for light work. *Id.* Contrastingly, some visual impairments restrict claimants from activities that are not generally required for light work anyway and, therefore, do not further erode the occupational base. *Id.*

The ALJ's findings regarding Mr. Valois' nonexertional limitations fall somewhere between the two hypothetical situations described in the Ruling. The ALJ found that Mr. Valois suffers from some pain and fatigue as well as from left-eye blindness. Beyond identifying that Mr. Valois would not be able to perform the full range of light work, nor perform work requiring binocular vision, and may need to wear protective eye gear, the ALJ's decision does not address any of the specific limitations given in either hypothetical situation. Because the ALJ's findings in this case fall somewhere in between the two hypothetical situations, the Ruling indicates that the Commissioner's policy was to solicit vocational evidence in Mr. Valois' case. The ALJ, therefore, erred when he did not solicit vocational evidence.

### *D.  Defendant's* **Ex Post Facto** *Attempts to Provide Reasons are Futile*

In further support of his position, Defendant also cites to the administrative record for evidence that could support the finding at issue.  ***Response*** (*Doc. 21*) at 5-6.  The ALJ, however, did not refer to this evidence in his decision.  (*R. at 11-18.*)  Reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision."  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962)).  It would be improper for a reviewing court to "supply[] possible reasons" for an ALJ's decision after the fact.  *Id.*  A court may not make a "post hoc effort to salvage [an] ALJ's decision" because such an effort would thrust the court beyond its proper role of judicial review and into the exclusive domain of the administrative agency as defined by Congress. *Id.* at 1084-85 (quoting *Allen v. Barnhart*, 357 F. 3d 1140, 1142 (10th Cir. 2004)).

Here, the ALJ gave no reasons to support his finding that Mr. Valois' nonexertional impairments had "little or no effect" on his ability to perform light work.  (*R. at 17.*)  The portions of the administrative record to which Defendant cites are inconsequential.  The only reasons for the finding that the Court may review are the reasons provided by the ALJ.  He found that Mr. Valois was limited to a "wide, but not full, range of light work . . . with no work requiring binocular vision and the ability to wear protective eye gear as needed."  (*R. at 14.*)  He then found, without any explanation, that "the additional limitations [restricting Mr. Valios to a wide, rather than full, range of light work] have little or no effect on the occupational base of unskilled light work.  A finding of 'not disabled' is therefore appropriate under the framework of [Grid rule 202.11]."  (*Id. at 17.*) The ALJ said nothing about how he found that Mr. Valois' nonexertional limitations had "little or no effect" on the job base.  He gave no reasons for his conclusion, and the reasons offered by Defendant are extraneous and futile.  The ALJ's finding that Mr. Valois' nonexertional impairments

had "little or no effect" on his RFC is not supported by substantial evidence, and Defendant's *ex post facto* reasons cannot save it.

## V.  Conclusion

For the reasons stated above, the Court **FINDS** that the ALJ's finding that Mr. Valois' nonexertional impairments have "little or no effect" on the applicable job base is not supported by substantial evidence.  Accordingly, the Court will grant Mr. Valois' ***Motion to Remand or Reverse Administrative Agency Decision*** (*Doc. 20*) and remand this case to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

**IT IS THEREFORE ORDERED** that Mr. Valois' ***Motion to Remand or Reverse Administrative Agency Decision*** (*Doc. 20*) be **GRANTED** and this case be **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_Lourdes A. Martínez_
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**